ACCEPTED
15-24-00009-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/16/2025 11:02 AM
CHRISTOPHER A. PRINE
CLERK

**No. 15-24-00009-CV**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/16/2025 11:02:07 AM
CHRISTOPHER A. PRINE
Clerk

**IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AUSTIN, TEXAS**

**TERRY BURNS, M.D. AND STEPHEN M. RAPKIN,**
*APPELLANTS*

**V.**

**THE CITY OF SAN ANTONIO, TEXAS, ACTING BY AND THROUGH THE
CITY PUBLIC SERVICE BOARD OF SAN ANTONIO, TEXAS,
AND KEN PAXTON, ATTORNEY GENERAL OF TEXAS**
*APPELLEES*

**ON APPEAL FROM THE 126TH JUDICIAL DISTRICT COURT,
TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-1-GN-23-001544**

## APPELLANTS' MOTION FOR REHEARING

Darby Riley
Texas Bar No. 16924400
darbyriley@rileylawfirm.com
RILEY & RILEY
ATTORNEYS AT LAW
320 Lexington Avenue
San Antonio, Texas  78215-1913
(210) 225-7236
(210) 227-7907 (facsimile)
*ATTORNEY FOR APPELLANTS*

i

# TABLE OF CONTENTS

Table of Contents.................................................................................. ii

Index of Authorities .............................................................................iii

Summary of the Argument ...................................................................1

Argument .............................................................................................2

**I. The Court erred in holding that a trial court has the power to issue a binding EDJA judgment even when the trial court lacks genuine subject matter jurisdiction** ..........................................2

   A. The trial court lacked "genuine" subject matter jurisdiction.................2
   B. Failure to follow the EDJA's accelerated appeal requirement cannot validate a void judgment........................................7
   C. The EDJA judgment is void.........................................................9
   D. The trial court had no subject matter jurisdiction to issue an EDJA judgment on the governance provisions of the City's bond ordinance. ..............................................................12

**II. The Suit Also Violates the Charter Amendment Proponent's Due Process Rights** ...................................................................15

Conclusion...........................................................................................16

Prayer ..................................................................................................17

Certificate of Compliance....................................................................18

Certificate of Service...........................................................................19

Appendix..............................................................................................20
   1. Court's Opinion, April 25, 2025
   2. Trial Court EDJA Judgment, December 7, 2020
   3. Citizens' Right to Amend Charter
      Art. 11, Sec. 5, TEX. CONST.
      Art. 1, Sec. 2, TEX. CONST.
      §9.004, TEX. LOC. GOV'T CODE
   4. §1205.021, TEX. GOV'T CODE, Authority to Bring EDJA Action

# INDEX OF AUTHORITIES

**CASES**                                                                                           **PAGE**

*Burns v. City of San Antonio,*
  2021 WL 5457049 *2 (Tex. App.—Austin, 11/18/21, pet. denied) ............8

*Carroll v. Carroll,*
  304 S.W.3d 366 (Tex. 2010) ...............................................................7

*Charleston v. Waller Ind. Sch. Dist.,*
   244 S.W.3d 555 (Tex. App.—Houston [1st Dist.] 2007, no pet.) .............9

*City of Austin v. Thompson,*
  147 Tex. 639, 219 S.W.2d 57 (Tex. 1949) .........................................5, 10

*City of Conroe v. San Jacinto River Auth.,*
  602 S.W.3d 444 (Tex. 2020) ...............................................................13

*City of Dallas v, Dallas Consolidated Elec. St. Ry. Co.,*
  105 Tex. 337, 148 S.W. 292 (Tex. 1912) .........................................5, 10

*City of Houston v. Rhule,*
  417 S.W.3d 440, 442 (Tex. 2014) .......................................................11

*City of Lubbock v. Isom*
  615 S.W.2d 171 (Tex. 1981) ...............................................................8

*City of Magnolia v. Magnolia Bible Church,*
  629 S.W.3d 471 (Tex. App.—Austin 2020, no pet.)..............................16

*Coalson v. City Council of Victoria,*
  610 S.W.2d 744 (Tex. 1980) ...........................................................5, 11

*In re D.S.,*
  602 S.W.3d 504 (Tex. 2020) .........................................................3, 5, 7

*In re E.R.,*
  385 S.W.3d 552, 557 (Tex. 2012) .......................................................16

*In re Morris,*
  663 S.W.3d 589 (Tex. 2023) ...........................................................5, 11

*Isom v. City of Lubbock,*
  613 S.W.2d 505 (Tex. Civ. App.—Eastland 1980,
  *rev'd.* 615 S.W.2d 171 (Tex. 1981) ....................................................8

*Narmah v. Waller Indep. Sch. Dist.,*
  257 S.W.3d 267 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ..............8

*Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.,*
  971 S.W.2d 439 (Tex. 1998) ...............................................................6

*Peralta v. Heights Medical Center, Inc.,*
  485 U.S. 80 (1988)..............................................................................12

*PNS Stores, Inc v. Rivera,*
  379 S.W.3d 267 (Tex. 2012) ...........................................................7, 12

*Texas Ass'n of Business v. Texas Air Control Board,*
  852 S.W.2d 440 (Tex. 1993) ...............................................................6

*Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc.,*
   659 S.W.3d 424 (Tex. 2023) .................................................................4, 5

**STATUTES**
§1205.021, TEX. GOV'T CODE, Authority to Bring EDJA Action...................20
§1205.151, TEX. GOV'T CODE ......................................................................7
TEX. GOV'T CODE ......................................................................................14
TEX. GOV'T CODE §1205.021(1)-(4).............................................................13
TEX. LOCAL GOV'T CODE ..............................................................................1

**OTHER AUTHORITIES**
§9.004, TEX. LOC. GOV'T CODE ..................................................................20

**RULES**
TEX. R. APP. P. 9.4(i)(3) ...............................................................................18
TEX. R. APP. P. 9.5 ......................................................................................19

**CONSTITUTIONAL PROVISIONS**
Art. 1, Sec. 2, TEX. CONST. ...........................................................................1
Art. 1, Sec. 2, TEX. CONST. .........................................................................20
Art. 11, SEC. 5, TEX. CONST.........................................................................1
Art. 11, Sec. 5, TEX. CONST. .......................................................................20
TEX. CONST., Art I, §13 .................................................................................6
TEX. CONST., Art. II, §1 .................................................................................6

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Appellants, Terry R. Burns, M.D. and Stephen M. Rapkin, file this Motion for Rehearing and would respectfully show:

## SUMMARY OF THE ARGUMENT

When the trial court lacks genuine subject matter jurisdiction, any judgment, including one under the Expedited Declaratory Judgment Act, is void and a nullity, subject to being set aside at any time. The Court here erred in not recognizing the distinction between the lack of true subject matter jurisdiction, which here derives from the trial court's lack of power to rule on the charter amendment before voter approval, and the absence of statutory "jurisdiction" which generally does not deprive the trial court of the power to act. The legislature does not have the power to restrict collateral attacks on judgments void under the state and federal Constitutions, as is the trial court's EDJA judgment.

Texas appellate courts have consistently protected citizens' right, under the Texas Constitution and statutes, to call an election on home rule charter amendments or other local initiatives through the petition process.[1] If allowed to stand, the Court's opinion will seriously erode that long-standing

---

[1] Art. XI, Sec. 5, TEX. CONST.; Art. 1, Sec. 2, TEX. CONST.; §9.004, TEX. LOCAL GOV'T CODE (Appendix 3).

1

right of Texas citizens. Many, if not most, local initiatives could be claimed to possibly affect the credit reputation of a city, as CPS Energy did in this case. CPS Energy used this claim to unlawfully file an expedited secret EDJA suit to obtain a court order that the initiative was invalid before the election process could be completed.

This Court should withdraw its Opinion, reverse the local court's ruling on the bill of review, and dismiss the original trial court's EDJA judgment as void.

## ARGUMENT

## I.

**The Court erred in holding that a trial court has the power to issue a binding EDJA judgment even when the trial court lacks genuine subject matter jurisdiction.**

### A. The trial court lacked "genuine" subject matter jurisdiction.

Appellants met their burden to show that the EDJA judgment clearly interfered with the election process. The judgment implicitly declared that the proposed city charter amendment could not take effect if passed because it was contrary to the governance provisions of the bond ordinance. The judgment also declared that the governance provisions were unchangeable by the City until all bonds were paid. The City's suit was aimed directly and exclusively at stopping the charter amendment before it could be voted on.

2

The pleadings and the evidence showed that. Counsel for the City admitted it on the record, and the Judge's pronouncements declared it. *See* Appellants' Brief with record citations at pp. 28-30. The City does not contend otherwise; there was no other stated reason to file the EDJA suit.

The main basis for Appellants' summary judgment motion was the trial court's lack of subject matter jurisdiction, in that the EDJA suit was "premature," not "ripe," and violated the separation of powers by interfering with an election process. CR8:3865-3868. The EDJA cannot be interpreted to confer on the trial court fundamental authority to act when the trial court lacks such authority under Constitutional prohibitions.

The Supreme Court of Texas distinguishes between the absence of "genuine" subject matter jurisdiction and the claimed lack of jurisdiction under a statute. *See In re D.S.,* 602 S.W.3d 504 (Tex. 2020). There the Court held that a court's lack of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act does not equate to a lack of subject matter jurisdiction "that deprives the court of power…. 'Jurisdiction is a word of many, too many, meanings.'" *Id.* at 518. "The Legislature has the authority, *within constitutional limits,* to restrict post-judgment jurisdictional challenges via collateral attack…." *Id.* at 517. (emphasis added).

3

The Supreme Court went on to say: "When we speak of 'genuine subject matter jurisdiction' we speak of a court's power to decide the case… [W]e have embraced the 'modern trend' away from labeling a requirement 'jurisdictional' in the true 'subject matter' sense." *Id.* at 519 (Lehrmann, J. concurring). (Commenting that sovereign immunity, for example, does not implicate subject matter jurisdiction because it can be waived; also commenting on the Supreme Court's "general reluctance to view *statutory requirements* as jurisdictional." *Id.* at 520 (emphasis added).

*See also Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc.,* 659 S.W.3d 424 (Tex. 2023), in which the Supreme Court recognized a clear line of demarcation between statutory "standing," pertaining to the merits of a claim, and true constitutional standing. For a party to have constitutional standing, they must have "(1) a concrete, particularized, actual or imminent injury; (2) that is traceable to the defendant's conduct, and (3) that would be redressed by a favorable decision." *Id.* at 440. Here the City's suit preceded any injury which might potentially occur if the charter amendment initiative was successful. The injury was not "imminent" but was contingent on the citizens' gathering of remaining signatures in a timely fashion and the voters' approval of the

4

amendment. A court without constitutional standing, like the trial court in this case, "cannot decide the case at all." *Id.*

In contrast to the situations in *D.S.* and *Molina*, here the Court is dealing with a lack of "genuine" subject matter jurisdiction, which deprived the trial court of power to issue a judgment declaring provisions of the proposed charter amendment to be invalid. Suits to enjoin citizen initiatives like charter amendments[2] or to declare them invalid, before the voters have approved them, have been dismissed for lack of subject matter jurisdiction in consistent Supreme Court rulings since 1912. These rulings were based not on legislation but on Constitutional principles of standing, ripeness, the separation of powers between legislative and judicial branches, and the prohibition of advisory opinions. *City of Dallas v, Dallas Consolidated Elec. St. Ry. Co.,* 105 Tex. 337, 148 S.W. 292, 293-94 (Tex. 1912); *City of Austin v. Thompson,* 147 Tex. 639, 219 S.W.2d 57, 61 (Tex. 1949); *Coalson v. City Council of Victoria,* 610 S.W.2d 744, 747 (Tex. 1980); *In re Morris,* 663 S.W.3d 589, 596, 598 (Tex. 2023).

---

[2] The Court notes (footnote 4, p. 15) that the trial court's EDJA judgment "does not, on its face, expressly enjoin any election," but the judgment clearly enjoins any "proceeding" challenging the trial court's findings. This appears to prohibit the submission of the 20,000 signatures to the City to trigger a charter election on the proposal.

These cases and others were thoroughly analyzed at Appellants' Brief, pp. 22-27, and were argued in Appellants' Cross-Motion for Summary Judgment at CR8:3865-3868.

The "genuine" and unwaivable nature of the subject matter jurisdiction involved in this case is explained in *Texas Ass'n of Business v. Texas Air Control Board,* 852 S.W.2d 440, 443-446 (Tex. 1993) (explaining standing, the separation of powers doctrine, the open courts provision of the Texas Constitution requiring injury, and the prohibition of advisory opinions addressing hypothetical injuries)[3]; and *Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.,* 971 S.W.2d 439, 442 (Tex. 1998) (Ripeness and standing are justiciability doctrines that originate from the prohibition of advisory opinions and the separation of powers doctrine under the Texas Constitution). These cases are fully briefed at Appellants' Brief, pp. 18-22.

The basic error of the Court's Opinion is in concluding that lack of true subject matter jurisdiction can be over-ridden by legislation like the EDJA.

---

[3] "One limit on courts' jurisdiction under both the state and federal constitutions is the separation of powers doctrine." *See* TEX. CONST., Art. II, §1" 852 S.W.2d at 444.

"Under the Texas Constitution, standing is implicit in the open court's provision, which contemplates access to the courts only for those litigants suffering an injury." TEX. CONST., Art. I, §13. *Id.*

"We therefore hold that standing, as a component of subject matter jurisdiction, cannot be waived in this or any other case and may be raised for the first time on appeal by the parties or by the court." *Id.* at 446.

The premature nature of the City's EDJA suit is a fundamental jurisdictional defect which cannot be waived and can be raised at any time by direct or collateral attack. *See, e*.g., *Carroll v. Carroll,* 304 S.W.3d 366, 367 (Tex. 2010); *In re D.S.,* 602 S.W.3d at 520: "…[A] judgment rendered without 'jurisdictional power' in the sense of lack of subject matter jurisdiction is 'void' and may 'be set aside by the trial court at any time.'"

## B. Failure to follow the EDJA's accelerated appeal requirement cannot validate a void judgment.

The Court decided not to consider Appellants' arguments on subject matter jurisdiction, because it determined that §1205.151, TEX. GOV'T CODE, does not allow a bill of review after a purported final EDJA judgment, whether or not the trial court had true subject matter jurisdiction. If the trial court decides that it has jurisdiction under the EDJA, this Court said, that decision cannot be challenged outside the accelerated appeal process of the EDJA. Opinion, p. 18. However, it is well settled that a trial court's finding of jurisdiction in a judgment does not validate a judgment which the record shows to be void for lack of subject matter jurisdiction. *PNS Stores, Inc v. Rivera,* 379 S.W.3d 267 at 270 (Tex. 2012).

The Court decided that Texas law makes no distinction between a void and voidable judgment in prohibiting any challenge to an EDJA judgment after the accelerated appeal is exhausted or waived. Opinion, p. 18. This is

7

indeed an unprecedented decision; *no Texas court has ever held that a judgment void for lack of true subject matter jurisdiction cannot be challenged outside of the initial appeal process.*[4]

In relying on the Supreme Court's brief *per curiam* opinion in *City of Lubbock v. Isom,*[5] this Court observed that "*City of Lubbock* does not say whether the bill of review in that case challenged a void or voidable judgment."  Opinion, p. 18.  But in reading that case, there is no reason to think that there was a claim in the lower courts that the trial court had no subject-matter jurisdiction; the discussion simply indicates a belated attack on the merits of the bond validation suit.  *See Isom v. City of Lubbock,* 613 S.W.2d 505, 507 (Tex. Civ. App.—Eastland 1980, *rev'd.* 615 S.W.2d 171 (Tex. 1981).  The Supreme Court opinion in *City of Lubbock* does not deal with a claim of lack of subject matter jurisdiction in the trial court or the appellate court.  The assumption that it makes no difference if the judgment was void is not warranted by *City of Lubbock.*

Similarly, in *Narmah v. Waller Indep. Sch. Dist.,* 257 S.W.3d 267 (Tex. App.—Houston [1st Dist.] 2008, no pet.), the Court held that a taxpayer was

---

[4] The previous appeal of this case did not deal with the merits of this case but dismissed for lack of *appellate* jurisdiction (late-filed notice of appeal).  *Burns v. City of San Antonio,* 2021 WL 5457049 *2 (Tex. App.—Austin, 11/18/21, pet. denied).
[5] 615 S.W.2d 171 (Tex. 1981).

precluded from using a restricted appeal to claim that the bonds validated by the EDJA judgment were issued without authority or were otherwise invalid[6]; that type of challenge to the validity of the bonds had to follow the accelerated appeal process.

In contrast, here the evidence is conclusive that the trial court lacked subject matter jurisdiction to even hear the EDJA case. As the Court recognized at pp. 10-13 of the Opinion, a void judgment is a "nullity," not subject to the normal rules of procedure or statutes of limitations and challengeable at any time either directly or collaterally.

**C. The EDJA judgment is void.**

The Court here did not decide whether the December 7, 2020 EDJA judgment (CR6:2636-2646) was void or voidable, because it determined that under the EDJA, both void and voidable judgments are immune to attack outside the direct accelerated appeal process. Opinion, p. 18.

As shown at pages 2-3, *supra*, there is a formidable line of Texas Supreme Court cases dismissing for lack of subject matter jurisdiction pre-election challenges to citizen initiatives. Those cases concluded that the trial

---

[6] See the related suit stating the grounds for challenging the validity of the bonds. *Charleston v. Waller Ind. Sch. Dist.,* 244 S.W.3d 555, 559 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

9

court had no power to hear those cases, i.e., the cases involved the lack of "genuine" subject matter jurisdiction.

The following are excerpts from those cases showing the genuine and fundamental nature of the lack of subject matter jurisdiction. These holdings apply directly to the charter amendment initiative before this Court. The EDJA judgment is void for lack of subject matter jurisdiction.

***City of Dallas****, 148 S.W.

p. 294: "As elections are essentially the exercise of political power, it cannot be doubted that all action properly related thereto and necessary to their completion is from the same source and is but the expression of the same power."

***City of Austin****, 219 S.W.2d

p. 59: "This court has adopted the view that it is beyond the power of a court of equity to enjoin an election or any incident to it."

p. 60: "The courts of this state have no jurisdiction to interfere with the political rights of the people to hold an election, and by holding an election is meant every step pertaining thereto…"

p. 61: "'…[T]he matter of stopping the progress of an election, merely for the purpose of inquiring into its validity, lies outside of the general scope of judicial power.'"

**Coalson,** 610 S.W.2d

p. 747: "The declaratory judgment suit, at this stage of the proceedings, seeks an advisory opinion. The election might result in the disapproval of the proposed amendment. District courts, under our Constitution, do not give advice nor decide cases upon speculative, hypothetical, or contingent situations."

**Morris,** 663 S.W.3d

p. 593: "Though we are not insensitive to the costs associated with a void election, '[i]t is of vastly greater importance that the courts refrain from interfering with the exercise of political functions.'"

While the EDJA states that a bond validation judgment cannot be challenged after it is final, this injunction cannot apply where the trial court had no power to issue the EDJA judgment in the first place. "A judgment rendered without subject matter jurisdiction cannot be considered final." *City of Houston v. Rhule,* 417 S.W.3d 440, 442 (Tex. 2014). Lack of genuine subject matter jurisdiction means the case is not justiciable, and *any* such judgment is void and a nullity. The Legislature cannot override the Constitutional principles requiring standing, ripeness, and an injury that is not contingent on events which may or may not occur. A court has no *power* to issue advisory opinions.

11

The Court here holds that lack of personal jurisdiction and due process can be challenged in the EDJA context, but holds that lack of true subject matter jurisdiction cannot be raised beyond the accelerated appeal process. This is an inversion of the former Texas jurisprudence, which held that lack of subject matter jurisdiction showed that a judgment was void and lack of personal jurisdiction only showed that it was voidable. Before *Peralta v. Heights Medical Center, Inc.*;[7] a Texas litigant had to meet all the bill of review requirements to challenge *personal* jurisdiction outside the direct appeal deadlines; however, this requirement did not apply when the trial court lacked *subject matter* jurisdiction. *See* the discussion in *PNS Stores, Inc. v. Rivera,* 379 S.W.3d 267, 272-73 (Tex. 2012). The Texas Supreme Court there ruled, in light of *Peralta,* that a collateral attack is now proper when the record affirmatively demonstrates *either* lack of personal or subject matter jurisdiction. *Id.*

**D. The trial court had no subject matter jurisdiction to issue an EDJA judgment on the governance provisions of the City's bond ordinance.**

As shown, the City lacked constitutional standing to bring the premature EDJA suit. But the trial court also lacked subject matter jurisdiction because the requested declarations fall outside the scope of the

---

[7] 485 U.S. 80 (1988).

EDJA. *City of Conroe v. San Jacinto River Auth.,* 602 S.W.3d 444, 456-57 (Tex. 2020).

The EDJA permits only *in rem* declarations concerning property rights. *Id.* at 456. The scope of the EDJA is limited to the narrow set of declarations a trial court can make regarding the issuer's authority to issue the public securities and the legality and validity of the public securities and public security authorizations and expenditures. TEX. GOV'T CODE §1205.021(1)-(4). (Appendix 4).

The EDJA uses a unique super-expedited process to validate public bonds. The trial in this case occurred in Travis County within 25 days of filing the suit, as allowed by the EDJA. There was publication notice only, also as contemplated by the EDJA, with no actual notice to the known proponents of the subject San Antonio charter amendment. CR2:65-66; CR6:2661-62.

The validity of the bonds was not challenged by the charter amendment proposal, nor was the City's authority to issue them. Contrary to the Court's factual statement, Opinion, p. 3, most of the bonds in question were issued in the years 2009 to 2019, not in 2020. CR6:2584-2587. All the bonds in question had been previously validated by the Attorney General. Opinion, pp. 3-4, and were incontestable.

13

The City attempted to justify this unprecedented use of the EDJA by alleging that the proposed charter amendment if passed would conflict with the bond ordinances; and the modifications "would eliminate the Board's autonomy from City politics." Opinion, p. 4. However, the ordinances do not provide autonomy from City politics. All utility rates are subject to City Council approval. CR2:102. Additionally, the Board must "ensure that policies adopted affecting research, development, and corporate planning will be consistent with City Council policy, and policies adopted by the Board of Trustees pertaining to such matters will be subject to City Council review." Governance provisions, CR6:2497. Additionally, the Council has the "absolute right at any time to change the method of selection of trustees." *Id.*

Additionally, state law allows publicly owned utilities to have either a five-member board like CPS Energy, or a full City Council board as proposed in the amendment. §1502.070, TEX. GOV'T CODE.

The changes proposed by the charter amendment were within the power of the City Council (and citizen legislators) to make.

Likewise, the City's claim, Opinion, p. 4, that the charter amendment was already affecting its bond rating was not supported by the evidence. Only if the amendment was approved by the voters did *one* of the national credit rating agencies predict a *potential* effect on the City's bond rating.

14

Appellants' Brief, pp. 8-9, CR6:2764.  The other two agencies had no comment on the charter petition.  CR4:1819; 1886-1893.

However, even if the record supported the City's allegations, (Appellants have shown that the record does not) neither of the City's justifications for the suit fits under the limited purposes of the EDJA, as set forth in §1205.021.  (Appendix 4).  Neither a challenge to the makeup of the board nor a possible impact on future interest rates affects the validity of the bonds nor the authority to issue then.  As shown, the vast majority of these bonds had been issued long before the proponents began gathering signatures for the charter amendment.

## II.

## The Suit Also Violated the Charter Amendment Proponents' Due Process Rights.

As stated, this case is not a legitimate EDJA case, in that it does not seek an *in rem* validation of bonds or of the authority to issue them; rather it seeks to obtain an interpretation of *governance provisions* for the utility itself, by default, without allowing any contrary interpretation to be presented, and with the express purpose of preventing the citizens' charter amendment from "going forward."  CR8:4257; *see* Appellants' Brief at pp. 10, 28-30.

15

Because of that misuse of the EDJA, the amendment proponents' due process rights were violated, even if the Court ignores the lack of subject matter jurisdiction. This is comparable to the situation in *In re E.R.,* 385 S.W.3d 552, 557 (Tex. 2012), where the state gave publication notice only of a parental termination proceeding, although the state knew the whereabouts of the mother; and *City of Magnolia v. Magnolia Bible Church,* 629 S.W.3d 471, 472 (Tex. App.—Austin 2020, no pet.), where the City gave publication notice only of a bond validation suit, knowing that the known opponents of the bonds would be unaware of the suit. Here the City was similarly able to use the EDJA to block the charter amendment without opposition by not giving the known proponents actual notice.

**CONCLUSION**

In short, not only was the City's suit constitutionally prohibited as premature, but it was clearly outside the narrow bounds of a legitimate bond validation action, even if the City had waited to see if the charter election would occur and if the amendment would be approved by the voters. The City clearly abused the special EDJA procedures to interfere with the citizens' protected rights of initiative. The City's request was beyond the trial court's power to grant.

16

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellants, Terry R. Burns, M.D. and Stephen M. Rapkin respectfully request that the Court grant this Motion for Rehearing, and after reconsideration, that the Court reverse the trial court's judgment of November 17, 2023 and set aside the original trial court's judgment of December 7, 2020 as void and of no effect; and for such other relief, including court costs, to which they may be entitled.

Respectfully submitted,

RILEY & RILEY,
ATTORNEYS AT LAW

By:_____

Darby Riley
Texas Bar No. 16924400
320 Lexington Avenue
San Antonio, Texas  78215-1913
(210) 225-7236 (telephone)
(210) 227-7907 (facsimile)
darbyriley@rileylawfirm.com

ATTORNEY FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(i)(3), I hereby certified that this Appellants, Terry R. Burns, M.D. and Stephen M. Rapkin's Motion for Rehearing contains 3,565 words (excluding the caption, table of contents, table of authorities, signature, proof of service, certification, and certificate of compliance). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

_____

Darby Riley

**CERTIFICATE OF SERVICE**

I hereby certify on this 16th day of May 2025 a true and correct copy of Appellants' Motion for Rehearing was served as indicated below on the following parties as provided for in TEX. R. APP. P. 9.5:

NORTON ROSE FULBRIGHT US LLP
Michael W. O'Donnell  Via e-file: mike.odonnell@nortonrosefulbright.com
Paul Trahan              Via e-file: paul.trahan@nortonrosefulbright.com
Emily Wolf               Via e-file: emily.wolf@nortonrosefulbright.com
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, Texas  78205

Lynn Saarinen            Via efile: Lynn.Saarinen@oag.texas.gov
Assistant Attorney General
Financial Litigation Section
General Litigation Division
300 West 15th Street, 6th Fl.
Austin, Texas 78701
Mail: MC-017
PO Box 12548
Austin, Texas  78711-2548

_____
DARBY RILEY

# APPENDIX

1. Court's Opinion, April 25, 2025
2. Trial Court EDJA Judgment, December 7, 2020
3. Citizens' Right to Amend Charter
   Art. 11, Sec. 5, TEX. CONST.
   Art. 1, Sec. 2, TEX. CONST.
   §9.004, TEX. LOC. GOV'T CODE
4. §1205.021, TEX. GOV'T CODE, Authority to Bring EDJA Action

# APPENDIX

# APPENDIX 1

# Court's Opinion
# April 25, 2025

**Affirmed and Opinion filed April 3, 2025.**



In The

# Fifteenth Court of Appeals

---

## NO. 15-24-00009-CV

---

**TERRY BURNS, M.D., AND STEPHEN M. RAPKIN, Appellants**

**V.**

**THE CITY OF SAN ANTONIO, TEXAS, ACTING BY AND THROUGH THE CITY PUBLIC SERVICE BOARD OF SAN ANTONIO, TEXAS, AND KEN PAXTON, ATTORNEY GENERAL OF TEXAS, Appellees**

---

**On Appeal from the 126th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-001544**

---

## OPINION

Appellants Terry Burns, M.D. and Stephen M. Rapkin appeal the trial court's summary judgment denying their petition for bill of review in which they challenged a judgment issued under the Expedited Declaratory Judgment Act (EDJA) as (1) void for lack of subject matter jurisdiction; and (2) void for a denial of notice amounting to a constitutional due process violation. *See* Tex. Gov't Code Ch. 1205. The City of San Antonio, acting by and through the City Public Service Board of

San Antonio, filed a motion for summary judgment seeking dismissal of the bill of review, arguing that the EDJA expressly barred the bill of review and, alternatively, that Appellants' claims were legally meritless.[1] Appellants filed a competing motion for summary judgment in which they alleged (1) the trial court lacked subject matter jurisdiction to enjoin movants or the registered voters of San Antonio from seeking to enact the charter amendment in question or any other charter amendment; (2) the trial court lacked jurisdiction to declare the proposed amendment invalid; and (3) the declaratory judgment was void because it was beyond the scope of the EDJA. The trial court granted the City's motion, denied Appellants' motion, and dismissed Appellants' bill of review.

In Appellants' first issue, they challenge the trial court's denial of their motion for summary judgment. In Appellants' second issue, listing several sub-issues, they challenge the grant of the City's summary judgment motion. We affirm the trial court's judgment.

**BACKGROUND**

In 1942, the City acquired, and has since owned and improved, its electric and gas utility systems pursuant to Chapters 1201 and 1372 of the Government Code. *See* Tex. Gov't Code § 1201.001–.067 (Public Security Procedures Act); *see also id.* § 1372.001–.103 (specific authority for state or local government to issue securities). From time to time, the City has adopted ordinances and issued public securities to finance the City's electric and gas utility systems.

The City confirms and extends investment of the management and control of the electric and gas utility systems in the City Public Service Board of San Antonio

---

[1] Appellee Attorney General Ken Paxton did not file a motion for summary judgment in the trial court and takes no position on the issues raised on appeal.

(the "Board," which now conducts business under the name CPS Energy). The Board derives its authority to manage these utilities from the city ordinances known as the "Governance Provisions." The Governance Provisions (1) established that Board membership consisted of five Trustees, one of whom was the City's Mayor; (2) specified that the Board has "absolute and complete authority and power" to control, manage, and operate the City's electric and gas utility systems; (3) provided that Board Trustees' terms of office and term limits were inconsistent with two-year terms and term limits for City Councilmembers; and (4) covenanted to maintain the governance and management structure until the public securities issued are no longer outstanding.

In 2020, the City authorized the issuance, sale, and delivery of 26 public securities ("Public Securities") authorized by 20 bond ordinances ("Ordinances") for the purpose of building, improving, extending, enlarging, and repairing the City's gas and electric utility systems or refinancing previously issued revenue obligations. As an example, the 2020 Bond Ordinance provided:

> The provisions of this Ordinance shall constitute a contract between the City and the holder or holders from time to time of the New Series 2020 Bonds or any Additional Parity Bonds, and, after the issuance of any of said bonds, no change, variation, or alteration of any kind in the provisions of this Ordinance may be made, unless as herein otherwise provided, until all of said bonds issued hereunder shall have been paid as to both principal and interest.

The Public Securities issued and, at the time the EDJA petition was filed, were outstanding or authorized in the total principal amount of $6,189,680,000. The City obtained the Attorney General's approval of the Public Securities and registered them with the Comptroller of Public Accounts for the State of Texas. The Public Securities and their authorizing Ordinances thus became "incontestable" and "valid, binding, and enforceable according to [their] terms." Tex. Gov't Code

3

§ 1371.059(a).

## I. The City Files the EDJA Action in the Trial Court.

In October 2020 Appellants began to collect signatures on a citizens' initiative petition (the "Initiative Petition"), which, if passed, would change the Board from a five-member board to an eleven-member board consisting of the City Council and the Mayor.

On November 12, 2020, the City filed an action in Travis County District Court seeking to "adjudicate the legality, validity and enforceability" of the Public Securities and their corresponding Ordinances. *See* Tex. Gov't Code §§ 1205.001–.152.

The City asserted that the Initiative Petition and its contemplated charter amendments ("Charter Amendments") would "unconstitutionally and impermissibly amend and impair the City's contractual obligations set forth in each of the Ordinances, including without limitation, the terms of the Governance Provisions, Term Limit Provisions and Amendment Provisions." The City alleged that the Charter Amendments sought by the Initiative Petition posed an imminent threat to the validity of the Public Securities in the form of contractual impairment because the modifications would eliminate the Board's autonomy from City politics. The City further alleged the Initiative Petition directly conflicted with the Ordinances in that the Ordinances could only be amended using exclusive methods promulgated through the Ordinances and as relied upon by holders of the Public Securities.

Citing actual harm rather than "likely" harm, the City alleged that "at least one of the national credit rating agencies" had revised its outlook for the City from "stable" to "negative," based in part on the existence and pendency of the Initiative Petition. The City depended "upon favorable credit ratings and outlooks to borrow

money at low interest rates where even small incremental changes can have tremendous financial impact." When the City filed its original petition, the Initiative Petition had not attained the requisite 20,000 signatures to place the proposed Charter Amendments on the ballot.

Pursuant to the EDJA, the City served the Attorney General with a copy of its petition and published notice to "interested parties" in Travis County through the *Austin American Statesman* and in Bexar County (where the City has its principal office) through the *San Antonio Express News*. *See* Tex. Gov't Code §§ 1205.041 (including among list of "interested parties" all persons who reside in territory of securities issuer), –.042 ("Service of Notice on Attorney General; Waiver of Service"), –.043 (providing details of timing and venue of publication notice). The City also published notice in five local newspapers in smaller cities where the City's electric and gas utility systems are located.[2] No person filed an answer or intervened. *See id.* § 1205.062.[3]

After a bench trial, the trial court granted the City's requested declaratory relief, declaring the Public Securities and Ordinances "legal, valid, and incontestable." Specifically, on December 7, 2020, the trial court rendered the following declarations:

1.  The City is an issuer of public securities as defined by Chapter 1205 and is authorized to bring this action.

2.  The City has complied with the statutory requirements of Chapter 1205, including timely and proper notice of trial.

---

[2] The local newspapers included the *Bandera Bulletin*, the *Boerne Star*, the *Wilson County News*, the *Pleasanton Express*, and the *Hondo Anvil Herald*.

[3] "The effect of notice given under Sections 1205.041 and 1205.043 is that (1) each person described by Section 1205.041(a) is a party to the action; and (2) the court has jurisdiction over each person to the same extent as if that person were individually named and personally served in the action." Tex. Gov't Code § 1205.044.

3. The City owns its electric and gas utility systems (together, the "Systems").

4. For the purpose of building, improving, extending, enlarging, and repairing the Systems or refinancing previously issued revenue obligations, the City has issued, sold, and delivered the following public securities, as defined by Chapter 1205, that remain outstanding (the "Public Securities"): [list of Public Securities]

5. For each Public Security, the City [] has made a valid "public securities authorization" as defined by Chapter 1205 (collectively, the "Ordinances"), which are as follows: [list of Ordinances]

6. The Court has subject matter jurisdiction over this action, and venue in Travis County is proper.

7. The Court has *in rem* jurisdiction over the Public Securities, as well as personal jurisdiction over the City, acting by and through the Board; the Attorney General; all residents, property owners, and taxpayers of the City; all ratepayers and customers of CPS Energy, including residential, commercial, retail, and wholesale customers; and any other persons who have or claim a right, title, or interest in any property or money to be affected by the Ordinances or the issuance of the Public Securities ( collectively, the "Interested Parties").

Pursuant to the EDJA's terms, the trial court's judgment is "binding and conclusive" against any party to the action, whether named and served with notice or served by publication. Tex. Gov't Code § 1205.151(b). The judgment also granted injunctive relief. *See id*. § 1205.151(c) (providing that judgment "is a permanent injunction against the filing by any person of any proceeding contesting the validity of . . . the public securities, a public security authorization," and "any adjudicated matter and any matter that could have been raised in the action."). No party appealed the judgment. *See id*. § 1205.068 (providing that "any party" to an EDJA action may appeal judgment; that "judgment from which an appeal is not taken is final" and that appeals are accelerated and take "priority over any other matter, other than writs of

6

habeas corpus").

## II.    Appellants File a Motion for New Trial and Appeal to the Third Court of Appeals.

On February 23, 2021, Appellants filed a motion for new trial in the EDJA action, identifying themselves as registered voters in the City and as some of the organizers of the Initiative Petition. Appellants alleged that the City filed its "secret" EDJA suit when petitioners had gathered 14,000 signatures and that the suit's "actual sole purpose" was to permanently enjoin the organizers and "all residents" of the City "from ever attempting to change the governance or policies of the city-owned utility by home rule charter amendment, under the pretense that such changes would breach provisions of the bonds." Appellants alleged that the City had been well aware of the organizers' identities but nonetheless did not provide them "actual notice" of the suit; "deliberately kept interested citizens from participating" in the suit; and "did not announce [the suit] publicly until January 7, 2021, in an attempt to foreclose appeal under § 1205 accelerated appeal procedures."

In their motion for new trial, Appellants asserted that the judgment was void because the trial court lacked subject matter jurisdiction. Appellants also sought a new trial on the ground that their due process rights were violated when the City provided them publication-notice only, citing a concurrence in *City of Magnolia v. Magnolia Bible Church*. *See* 629 S.W.3d 471, 476–78 (Tex. App.—Austin 2020, no pet.) (Rose, C.J., concurring). The trial court denied the motion for new trial, and Appellants filed a notice of appeal on May 5, 2021.

On appeal, the City alleged that the Third Court of Appeals lacked jurisdiction over the appeal because Appellants' notice of appeal was untimely. *Burns v. City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio*, No. 03-21-00214-CV, 2021 WL 5457049, at *2 (Tex. App.—Austin Nov. 18, 2021, pet. denied) (mem. op.).

7

Assuming without deciding that Appellants were "defendant[s]" under Rule 329 of the Texas Rules of Civil Procedure and were entitled to file a Rule 329 motion for new trial in the EDJA action, the Third Court addressed whether Appellants' notice of appeal was timely filed. *Id.* The EDJA provides that appeals under the act are to be "governed by the rules of the supreme court for accelerated appeals[.]" Tex. Gov't Code § 1205.068(e). In an accelerated appeal, a notice of appeal must be filed within 20 days after the judgment is signed or, if a proper extension request is made and granted, within 35 days. *See* Tex. R. App. P. 26.1(b); *see also* Tex. R. App. P. 26.3 (permitting extension of time to file notice of appeal if a party files a notice of appeal and a motion requesting an extension of time within 15 days after the deadline for filing the notice of appeal). Unlike in a non-accelerated appeal, a timely-filed motion for new trial does not extend the deadline to file the notice of appeal in an accelerated appeal. Tex. R. App. P. 28.1(b); *see In re K.A.F.*, 160 S.W.3d 923, 927 (Tex. 2005). Concluding that Appellants' notice of appeal was due March 15, 2021, or with an extension, March 30, 2021, the Third Court held that Appellants' notice of appeal filed May 5, 2021 was untimely, depriving the Third Court of Appeals of jurisdiction. *Burns*, 2021 WL 5457049, at *2.

In dismissing the appeal for lack of jurisdiction, the Third Court rejected Appellants' argument that the appeal should be considered under the standard timelines rather than the accelerated timelines because their Rule 329 motion was the substantive equivalent of an equitable bill of review. *Id.* at *3. Appellants also contended that the Third Court of Appeals had jurisdiction over their appeal because the substance of their motion constituted a collateral attack on the EDJA judgment. *Id.* at *4. While acknowledging that the substance of Appellants' motion could arguably support a conclusion they were attempting to lodge a collateral attack, the Third Court rejected Appellants' attempt to come within its jurisdiction because

Appellants failed to follow the proper procedure for a collateral attack. *Id.* (citing *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)) Specifically, Appellants filed their motion for new trial in the same proceeding as the EDJA action rather than in a separate suit as required to collaterally attack a judgment. *Burns*, 2021 WL 5457049, at *3. Having rejected each of Appellants' contentions, the Third Court of Appeals dismissed Appellants' appeal for lack of jurisdiction. *Id.* at *4–5. Appellants' requests for rehearing and rehearing en banc were denied, as was their petition for review to the Texas Supreme Court.

### III.   The Trial Court Denies Appellants' Petition for Bill of Review Filed After the Third Court of Appeals Dismissed the Appeal.

On March 21, 2023, Appellants filed a petition for bill of review in a new case number seeking to set aside the EDJA court's judgment as void for lack of subject matter jurisdiction. Appellants asserted the EDJA court lacked subject matter jurisdiction because (1) the judgment impermissibly interfered with an election; and (2) the judgment was outside the scope of the EDJA because it prevented a city-owned energy utility from being challenged by "citizen legislators." Appellants subsequently amended their bill of review to add a claim that they were prevented from presenting a meritorious defense because the City failed to give them proper notice of the EDJA petition.

The City filed a motion for summary judgment, asserting it was entitled to judgment as a matter of law because (1) a bill of review is not available in an EDJA action; (2) the trial court had subject matter jurisdiction; and (3) Appellants were not prevented from asserting meritorious defenses. Appellants filed a cross-motion for summary judgment in which they asserted entitlement to judgment as a matter of law because the trial court's declaratory judgment was void for lack of subject matter jurisdiction. The trial court, without stating its reasons, granted the City's motion

and denied Appellants' motion. This appeal followed.

In two issues, Appellants argue that the trial court erred in granting the City's summary judgment and denying their motion for summary judgment. Appellants also challenge the trial court's subject matter jurisdiction over the City's EDJA petition. The City responds that a petition for bill of review is not permitted to challenge a declaratory judgment under the EDJA, that a bill of review is not available to Appellants because they did not avail themselves of all adequate legal remedies and cannot establish a meritorious defense, and that Appellants failed to establish that the judgment is void.

## I.    Standard of Review

This case presents a cornucopia of issues—the review of cross motions for summary judgments, the Expedited Declaratory Judgment Act's interpretation, and the availability of different mechanisms for challenging judgments after the time for an appeal has expired.

We review the trial court's grant of summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). To prevail on a traditional motion for summary judgment, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. Tex. R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When opposing parties file cross motions for summary judgment, each party must establish that it is entitled to judgment as a matter of law. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). When the trial court grants one motion and denies the other, as the trial court did here, we review all questions presented and render the judgment the trial court should have rendered. *Id*. Summary judgment will

10

be granted against a bill of review petitioner if the summary judgment movant can establish the absence of any necessary element of the bill of review. *See In re Baby Girl S.*, 407 S.W.3d 904, 909 (Tex. App.—Dallas 2013, pet. denied) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 311–12 (Tex. 1984)). When the order granting summary judgment does not specify the grounds relied upon, we affirm the judgment if any ground that the motion advances is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Both parties acknowledge that this case requires us to interpret the EDJA. We review questions of statutory construction de novo, seeking to ascertain and effectuate the Legislature's intent as expressed by the statute's language, considering the context and framework of the statute as a whole. *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020) (interpreting the EDJA); *see Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019); *see also City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 580 (Tex. 2018).

This case also presents questions of jurisdiction. Whether a trial court had jurisdiction is a question of law that we review de novo. *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (subject matter jurisdiction); *see PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012).

Texas courts distinguish between void judgments and judgments that are merely voidable with respect to the mechanisms available to challenge them. It is "well settled that a litigant may attack a void judgment directly or collaterally." *PNS Stores*, 379 S.W.3d at 271; *see also Zarate v. Sun Operating Ltd., Inc.*, 40 S.W.3d 617, 620 (Tex. App.—San Antonio 2001, pet. denied); *Sanchez v. Roberts Truck Ctr. of Tex.*, LLC, No. 11-19-00392-CV, 2021 WL 4998763, at *2 (Tex. App.—Eastland Oct. 28, 2021, no pet.) (mem. op.). A judgment is void, as opposed to voidable, if the court lacked jurisdiction (1) over a party or the property; (2) over the

11

subject matter; (3) to enter a particular judgment; or (4) to act as a court. *In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020); *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985) (per curiam).

"There is no set procedure for a collateral attack, nor is there a statute of limitations." *Sanchez*, 2021 WL 4998763 at *2; *see In re A.G.G.*, 267 S.W.3d 165, 169 (Tex. App.— San Antonio 2008, pet. denied); ("A party making a collateral attack on a judgment does not need to meet the requirements of a bill of review."); Adele Hedges & Kim Askew, 1 Tex. Prac. Guide: Civil Pretrial § 9:149 (Nov. 2024) (explaining that there is "no set procedure for a collateral attack."). A collateral attack attempts to "avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes." *PNS Stores,* 379 S.W.3d at 272 (citing *Prostok*, 165 S.W.3d at 346). A judgment may also be "challenged through a collateral attack when a failure to establish personal jurisdiction violates due process." *PNS Stores,,* 379 S.W.3d at 273 (relying on *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 81, 108 S. Ct. 896, 897, 99 L. Ed. 2d 75 (1988)).

In a collateral attack, the challenged order is presumed valid, and the party challenging it has the burden to show that it is void. *See Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) (presumption); *Armentor v. Kern*, 178 S.W.3d 147, 149 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (burden). The presumption of validity is dispelled when the record establishes a jurisdictional defect. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) "The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it either (1) establishes that the trial court lacked subject matter jurisdiction over the suit; or (2) exposes such personal jurisdictional deficiencies as to violate due process." *PNS Stores*, 379 S.W.3d at 273.

By contrast, judgments that are merely voidable must be attacked directly;

they are not eligible for collateral attack. *Id.* at 271; *Sanchez*, 2021 WL 4998763 at *2; *see Zarate*, 40 S.W.3d at 621. "A direct attack—such as an appeal, a motion for new trial, or a bill of review—attempts to correct, amend, modify or vacate a judgment and must be brought within a definite time period after the judgment's rendition." *PNS Stores*, 379 S.W.3d at 271. To set aside a judgment by bill of review, the petitioner ordinarily must plead and prove "(1) a meritorious defense to the underlying cause of action, (2) which the plaintiffs were prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on their own part." *Mabon Ltd. v. Afri-Carib Enterprises, Inc.*, 369 S.W.3d 809, 812 (Tex. 2012) (quoting *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004)). Not all elements are required in every case, however. *See, e.g., Peralta*, 485 U.S. at 84, 87, 108 S.Ct. at 900 (concluding that if a bill-of-review plaintiff proves the absence of service or the lack of notice of the dispositive trial setting, the plaintiff is relieved of proving the traditional bill-of-review elements).

## II.  The Consequences of the EDJA's Restrictions on Challenges to an EDJA Court's Judgment

Appellants argue that the trial court erred by granting summary judgment for the City and denying the City's motion to the extent that the Court relied on the City's argument that the EDJA expressly bars Appellants from challenging the EDJA court's judgment as void. The City responds that the plain text of Government Code Section 1205.151 expressly bars Appellants' challenges to the EDJA judgment. We hold that Chapter 1205 bars Appellants' challenges to the EDJA court's judgment as void for lack of subject matter jurisdiction, but it does not bar Appellants from challenging the EDJA court's judgment as void for lack of notice amounting to a Due Process Clause violation.

13

**A. Challenges to the EDJA Court's Subject Matter Jurisdiction**

The City moved for summary judgment on the ground that EDJA Section 1205.151 bars the Appellants' challenges asserted in their bill of review. Appellants argue that, despite styling their pleading as a bill of review, Appellants are actually asserting a collateral attack on the judgment that is not barred by Section 1205.051 of the EDJA. According to Appellants, "[a] void judgment—one issued, as here, by a trial court lacking subject matter jurisdiction—can be challenged at any time either directly or collaterally." The City responds that Appellants' challenges are not true collateral attacks and are barred by the EDJA.

To resolve the question whether the Appellants' claims are barred, we need not determine whether Appellants are asserting a direct or collateral attack. "It is well settled that a litigant may attack a void judgment directly"—as through a bill of review—"or collaterally." *PNS Stores*, 379 S.W.3d at 271; *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). Although the general rule is that a void judgment may be attacked at any time, this rule is not absolute. *See In re D.S.*, 602 S.W.3d at 516. The Texas Supreme Court has held that the "Legislature has the authority, within constitutional limits, to restrict post-judgment jurisdictional challenges via collateral attack," and courts "are not at liberty to judicially expand the statute's plain language" where the Legislature has imposed such restrictions. *Id.* (holding that Texas Family Code Section 161.211(c) plainly foreclosed a collateral attack on the judgment premised on an alleged lack of subject matter jurisdiction, and that the father's collateral attack on the judgment terminating parental rights was consequently barred). Accordingly, the question is whether, in crafting the EDJA, the Legislature restricted the trial court's power to act on the challenges asserted, whether brought as a direct attack or a collateral attack.

Appellants' challenges to the EDJA judgment come in two flavors—

14

challenges to the EDJA court's subject matter jurisdiction[4] and a challenge that the judgment is void due to lack of notice amounting to violation of due process under the United States Constitution. We first examine whether the EDJA bars challenges to a post-judgment attack on the EDJA court's subject matter jurisdiction, a question we review de novo. *See City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009). Our task is to "ascertain and give effect to the Legislature's intent, and 'the truest manifestation of what lawmakers intended is what they enacted.'" *In re D.S.*, 602 S.W.3d at 514 (quoting *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013)). We construe the statute as a whole while also considering the specific wording in context. *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013).

The EDJA is codified at Texas Government Code Chapter 1205. Section 1205.151 sets out the effect of a "final judgment of a district court in an action" under that chapter. *See* Tex. Gov't Code § 1205.151. The effect is profound—the judgment "is a permanent injunction against the filing by any person of any proceeding contesting the validity of (1) the public securities, a public security authorization, or an expenditure of money relating to the public securities described in the petition; (2) each provision made for the payment of the public securities or of any interest on the public securities; and (3) any adjudicated matter and any matter that could have been raised in the action." Tex. Gov't Code § 1205.151(c). Section 1205.068 authorizes an appeal that is "governed by the rules of the supreme court for accelerated appeals in civil cases," but nothing in Section 1205.151 purports to

---

[4] Appellants challenge the trial court's judgment as void for lack of subject matter jurisdiction, arguing (1) the judgment violated separation of powers because it enjoined an election; (2) the judgment violated the Texas Constitution's open-courts provision because the issue was not ripe; and (3) the judgment was outside the scope of the EDJA. Although we do not analyze the merits of these challenges, we note that the EDJA judgment does not, on its face, expressly enjoin any election.

authorize a bill of review proceeding if a party misses the window to challenge the judgment by appeal. Nor does Chapter 1205 say anything about allowing a collateral attack on the trial court's subject matter jurisdiction.

We assume that the Legislature chose its words with care, including each for a purpose and deliberately omitting others. *In re D.S.*, 602 S.W.3d at 514; *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 701 (Tex. 2015); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). Construing the statute as a whole, we hold that the Legislature has restricted the ability of litigants to contest the validity of "any adjudicated matter and any matter that could have been raised in the action." Tex. Gov't Code § 1205.151(c). Specifically, the Legislature authorizes litigants to challenge such matters in an appeal pursuant to Section 1205.168, but the Legislature has barred other mechanisms such as bills of review or collateral attacks.

Applying this interpretation, we conclude that Appellant's subject matter jurisdiction challenges to the EDJA court's judgment are barred. The EDJA court expressly adjudicated the question of whether it had subject matter jurisdiction, declaring that the court "has subject matter jurisdiction over this action." Subject matter jurisdiction challenges therefore constitute "adjudicated matters" or "any matter[s] that could have been raised" in the EDJA action. Tex. Gov't Code § 1205.151(c). A bill of review is a "proceeding," so it cannot be used to contest the validity of the court's subject matter jurisdiction. *Proceeding*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Any procedural means for seeking redress from a tribunal or agency."). So is a collateral attack. *Collateral Attack*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("An attack on a judgment in a proceeding other than a direct appeal."). Appellants correctly argue that they are free to choose one path or the other, *PNS Stores*, 379 S.W.3d at 271, but the EDJA stands as a "permanent

16

injunction" blocking both paths. *See* Tex. Gov't Code § 1205.151(c).

This interpretation accords with the Supreme Court's opinion in *City of Lubbock v. Isom*, 615 S.W.2d 171, 172 (Tex. 1981) (per curiam). In *City of Lubbock*, participants in a suit under the EDJA's predecessor statute failed to appeal the judgment on a timely basis. *Id*. at 172. They later sought relief by bill of review in a separate suit challenging the validity of the EDJA judgment approving the city's issuance of bonds. *Isom v. City of Lubbock*, 613 S.W.2d 505, 505–06 (Tex. App.—Eastland 1980), *rev'd*, 615 S.W.2d 171 (Tex. 1981). The City of Lubbock filed a plea to the jurisdiction, and the trial court dismissed the bill without an evidentiary hearing. *Id*. The Eastland Court of Appeals reversed, holding that the EDJA did not "take away the power of the court to act" on the bill of review. *Id.* at 508.

The City of Lubbock appealed to the Texas Supreme Court and won a reversal. Construing the EDJA's predecessor statute, the Texas Supreme Court held that the challenger was "expressly barred" from bringing the bill of review challenging the validity of the declaratory judgment. *City of Lubbock*, 615 S.W.2d at 172. The Court relied on language from the EDJA's predecessor statute, which stated in relevant part:

> In the event the decree of the District Court determines that the Issuer has authority to issue the Securities for the consideration and upon the terms set forth in the petition for declaratory judgment hereunder, . . . and no appeal is taken within the time above prescribed, . . . such decree shall, as to all matters adjudicated, be forever binding and conclusive, against the petitioner and all other parties to the cause, . . . *and shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the bonds*, ……

*Id.* at 172 (emphasis original) (quoting Act of May 30, 1959, 56th Leg., R.S., ch. 316, § 8, 1959 Tex. Gen Laws 692–93, *repealed by* Act of March 8, 1979, 66th Leg.,

R.S., ch. 400, § 14(a), 1979 Tex. Gen. Laws 881).[5] The current EDJA retains this "permanent injunction language," which deprives the trial court of power to act on Appellants' subject matter jurisdiction challenges.

Appellants urge us to distinguish *City of Lubbock* as merely precluding bill-of-review attacks on voidable judgments and not collateral attacks on void judgments. *City of Lubbock* does not say whether the bill of review in that case challenged a void or a voidable judgment. Regardless, the EDJA makes no distinction on that point—when Section 1205.068 accelerated appeals are exhausted or waived, the judgment stands as a "permanent injunction" against any proceeding challenging the validity of the judgment on any matter that was or could have been adjudicated. *See* Tex. Gov't Code § 1205.151(c).

The First Court of Appeals reached a similar conclusion in interpreting these same statutory provisions. The First Court of Appeals held that restricted appeals, which may be brought within six months after a judgment is signed, are unavailable in EDJA actions because they are inconsistent with the EDJA's purposes. *See Narmah v. Waller Indep. Sch. Dist.*, 257 S.W.3d 267, 274 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In so holding, the court dismissed the appellant's restricted appeal, which included "issues contending that the judgment is void." *Id.* at 274. The court explained:

> We reach this conclusion because the Act's dual purposes of speedy determination and finality would be completely undermined by allowing a restricted appeal: a restricted appeal could be perfected any time within six months after the judgment's rendition, whereas every provision of the Act is geared to providing the fastest adjudication possible. In light of these purposes of the Act, it is significant that

---

[5] Former article 717m was codified as Government Code section 1205.151 in a "nonsubstantive revision of statutes relating to public securities." Act of May 24, 1999, 76th Leg., R.S., ch. 227, § 1, 1999 Tex. Gen. Laws 721, 742.

section 1205.068(e) mentions only accelerated appeals. *Id.* at 273.

The City argues that these same statutory objectives apply here and provide context for interpretation. We agree that "we do not read the Act's appellate provision in a vacuum, but instead with an eye toward the purpose of the Act: that a speedy and final determination be made." *Id.* "The Legislature enacted the EDJA to provide issuers of public securities—*e.g.*, the City of Houston—a method of quickly and efficiently adjudicating the validity of public securities and acts affecting those public securities." *Hotze v. City of Houston*, 339 S.W.3d 809, 814 (Tex. App.— Austin 2011, no pet.); *see also Rio Grande Valley Sugar Growers, Inc. v. Attorney Gen. of Tex.*, 670 S.W.2d 399, 401 (Tex. App.—Austin 1984, writ ref'd n.r.e.) ("The total thrust of the [EDJA] is to dispose of public securities validation litigation with dispatch.").

Significantly, the Act provides that "[t]o the extent of a conflict or inconsistency between this chapter [the Act] and another law, this chapter controls." Tex. Gov't Code § 1205.002(a). The EDJA is replete with provisions that are designed to make the proceeding move quickly, including a Legislative directive that the court must try the action "with the least possible delay." Tex. Gov't Code § 1205.065(a). The EDJA authorizes an appeal, but this appeal is an accelerated appeal in which the appellate court is to "render its final order or judgment with the least possible delay." Tex. Gov't Code § 1205.068(e). The First Court of Appeals recognized that the vast discrepancy between an accelerated appeal—which must be perfected within 20 days of the judgment—and the six-month window for a restricted appeal "would eviscerate the speedy and final determination that the Legislature intended for proceedings under the Act." *Narmah*, 257 S.W.3d at 272; Tex. R. App. P. 26.1(b) ("[I]n an accelerated appeal, the notice of appeal must be

19

filed within 20 days after the judgment or order is signed[.]"); Tex. R. App. P. 26.1(c) (authorizing parties meeting certain conditions to bring restricted appeal within six months after judgment is signed).

These concerns are exacerbated here, where a party may bring a bill of review up to four years after a judgment is signed. *See* Tex. Civ. Prac. & Rem. Code § 16.051. And a void judgment ordinarily "can be collaterally attacked at any time." *PNS Stores*, 379 S.W.3d at 272. Extending subject matter jurisdiction uncertainty for four years or indefinitely is irreconcilable with the Legislature's goal of achieving an expedited, final, and conclusive end to litigation affecting Texas public securities. Accordingly, we hold that Appellants' challenges to the EDJA court's subject matter jurisdiction are barred. The trial court did not err to the extent that it granted the City's summary judgment motion and dismissed the bill of review as to these challenges. Nor did it err by denying Appellants' summary judgment motion for the same reason. We overrule both of Appellants' appellate issues with respect to their subject matter jurisdiction challenges.

## B. Other Challenges

This holding does not resolve the entire case, however. We do not read the statute to bar *every* potential attack on the judgment, especially a collateral attack asserting that a judgment is void for lack of notice that is tantamount to a denial of due process.

In *Peralta*, the United States Supreme Court held that "a judgment entered without notice or service is constitutionally infirm," and some form of attack must be available when defects in personal jurisdiction violate due process. 485 U.S. at 84, 108 S.Ct. at 899. Both the Texas Supreme Court and the U.S. Supreme Court have recognized that a judgment can be challenged as void through a collateral attack when a failure to establish personal jurisdiction violates a litigant's due process

20

rights. *See id.*; *PNS Stores*, 379 S.W.3d at 273.

The Texas Supreme Court unanimously interpreted a Family Code provision's "strict" six-month deadline to challenge a termination of parental rights judgment following citation as not foreclosing a parent's challenge when the parent had no constitutionally adequate notice of the proceeding. *See In re E.R.*, 385 S.W.3d 552, 555 & n.6 (Tex. 2012). The Court interpreted Texas Family Code Section 161.211(b), which provided that "[n]otwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who is served by citation by publication is not subject to collateral or direct attack after the sixth month after the date the order was signed." Accordingly, we proceed to the due process question.

## III.    Due Process and the Right to Assert a Meritorious Defense

Having held that the EJDA does not bar the Appellants' challenge to the EDJA court's judgment as void for a deprivation of notice constituting the denial of due process, we now resolve the merits of that issue.

Appellants assert they were prevented from presenting a meritorious defense because they were not personally served with notice of the EDJA action. Appellants further argue that the trial court lacked jurisdiction over them as Interested Parties because the City's notice by publication violated their due process rights.

An *in rem* class action brought under the EDJA is binding on all residents, taxpayers, property owners residing in the territory of the issuer, and others claiming a right, title, or interest in the property or money affected by the public securities (referred to in the EDJA as "Interested Parties"). Tex. Gov't Code § 1205.041; *see also id.* § 1205.023 (proceeding is *in rem* and binding on all Interested Parties). All of these Interested Parties are automatically parties to the action, and the court's jurisdiction extends to each of them as though they were individually named and

21

personally served in the action. *Id*. § 1205.044. Any Interested Party can become a named party to the lawsuit by filing an answer with the court before the time set for trial. *Id*. § 1205.062(1).

Upon receipt of the EDJA petition, the trial court will set the trial date and enter an order, in the form of a notice, advising all Interested Parties of their right to appear at the trial and to show cause why the court should not grant the relief requested in petition. *See* Tex. Gov't Code § 1205.041. A copy of the notice order must be published in Travis County and the county where the issuer has its principal office. *Id*. § 1205.043. The notices must be published once in each of two consecutive calendar weeks, and the first publication in each paper must be prior to the 14th day before the trial date. *Id*. § 1205.043(b).

The parties do not dispute that the City complied with the notice provisions of the EDJA. Appellants contend they were prevented from asserting meritorious defenses because they were not personally served with notice of the bond-validation suit. The EDJA states that a bond-validation proceeding is "a class action binding on all persons" who reside or own property within the territory of the bond issuer or are taxpayers of the bond issuer. Tex. Gov't Code § 1205.023(2). Because the EDJA is an *in rem* proceeding, notice by publication is constitutionally sufficient; neither service of process nor mail notice is required. *See Jackson v. Waller Indep. Sch. Dist.*, Civ. A. No. H-07-3086, 2008 WL 818330, at *9 (S.D. Tex. Mar. 24, 2008) (interpreting Texas EDJA publication provision), *order clarified on other grounds*, 625 F. Supp. 2d 357 (S.D. Tex. 2008).

Appellants cite Chief Justice Rose's concurring opinion in *City of Magnolia v. Magnolia Bible Church*, 629 S.W.3d 471, 472 (Tex. App.—Austin 2020, no pet.), arguing that their due process rights were violated by the City's notice by publication. Initially, we note that *City of Magnolia* was a plurality opinion from

another court, with no precedential value here. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (defining horizontal stare decisis as requiring three-judge panels to follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision); *see also In re Reardon*, 514 S.W.3d 919, 923 (Tex. App.—Fort Worth 2017, orig. proceeding) (explaining that courts of appeals are not bound by precedent of other courts of appeals).

We further note that the facts in *City of Magnolia* are distinguishable from the facts in this case. In *Magnolia*, the City of Magnolia filed an EDJA action to validate a water rate ordinance applicable only to nonprofit ratepayers, knowing that several churches opposed the rate as violating their personal, religious freedom. *City of Magnolia*, 629 S.W.3d at 472. The city published notice as authorized by the EDJA and obtained a judgment, unbeknownst to the churches, which had sent a demand letter to the city during the pendency of the validation suit. *Id*. at 473. In this demand letter, the churches threatened litigation, claiming that the water rate was discriminatory, violated their rights under the Texas Religious Freedom Restoration Act, and violated their personal tax-exempt status. *Id*. The trial court granted the churches' motions for new trial in the EDJA action, and the Third Court of Appeals, in a per curiam opinion, affirmed the trial court. *Id*. at 472.

In a concurring opinion, Chief Justice Rose acknowledged that "notice by publication satisfies due process as to the parties bound by an EDJA judgment because the EDJA permits only *in rem* declarations concerning property rights[.]" *Id*. at 475. Concluding that the EDJA in that case had the "effect of extinguishing the Churches' private claims," the Chief Justice opined that, "[u]nder the particular and unique circumstances of this case, notice by publication did not satisfy the Churches' right to due process." *Id*. at 476.

23

Given the non-precedential value of a plurality opinion from another court of appeals and the distinguishing circumstances, we decline to adopt the due process analysis in the concurring opinion in *Magnolia*. While also not binding, we find the reasoning in *Jackson v. Waller I.S.D.* persuasive. *See Jackson*, 2008 WL 818330.[6] In *Jackson*, the court addressed a taxpayer challenge to a school bond election and whether a declaratory judgment issued under the EDJA deprived the federal courts of jurisdiction over the taxpayers' claims. *Id.* at *1–3. After the taxpayers challenged the bond election, the school district filed suit under the EDJA and issued a notice under the EDJA's notice provision, informing all residents and property holders of the hearing and trial in the bond-validation action. *Id.* at *2. Arguing that state courts lacked authority to enjoin *in personam* proceedings in federal courts, the taxpayers contended that the Texas EDJA court lacked jurisdiction over them because the school district failed to provide adequate notice of the EDJA action. *Id.* at *4. The taxpayers argued—similar to Appellants' argument here—that notice by publication was not sufficient "with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Id.*

Interpreting the EDJA, the *Jackson* court held that the EDJA's notice by publication was sufficient to meet constitutional due process standards. *Id.* at *10. The court contrasted an action under the EDJA, which involves public interest in bond validation, with those cases requiring individual notice, which primarily

---

[6] Although we look to decisions of the lower federal courts and other state courts, only decisions of the United States Supreme Court, the Texas Supreme Court, and prior decisions of this Court are binding precedent. *See In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189–90 (Tex. 2009) (citing *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are *obligated* to follow only higher Texas courts and the United States Supreme Court.") (emphasis original)).

involve private rights to money and real property. *Id*. at *8. The parties in *Jackson* argued that individual mail notice was required when the identities of interested parties could be determined. *Id.* The court rejected that argument, emphasizing that cases requiring individual mail notice involved private rights to money and to real property. *Id.* The private property interests in those cases presented different due process considerations than the public interest in a bond validation proceeding. *Id.* Individual defendants' rights in a bond validation action do "not bear the hallmarks of a constitutionally protected liberty or property interest." *Id.* (quoting *Denham Springs Econ. Dev. Dist. v. All Taxpayers, Property Owners and Citizens of Denham Springs Econ. Dev. Dist.*, 945 So.2d 665, 683 (La. 2006)). In light of the public versus private distinction, the court concluded that "the publication notice authorized by section 1205.043 of the EDJA was constitutionally sufficient." *Id*. at *9. The same is true here, where no private rights are in play.

We conclude that under the facts of this case the City's notice by publication did not violate Appellants' due process rights; therefore, the EDJA court had jurisdiction over the parties. *See City of Conroe*, 602 S.W.3d at 456 (declining to address due process challenge to EDJA notice requirement because EDJA does not allow declarations concerning *in personam* rights and liabilities, but "permits only *in rem* declarations concerning property rights."). Accordingly, the trial court did not err by granting summary judgment and dismissing this challenge. For the same reasons, the trial court did not err by denying Appellants' summary judgment motion. We overrule Appellants' issues with regard to this last remaining challenge and affirm the judgment.

## CONCLUSION

The trial court did not err in granting the City's motion for summary judgment and denying Appellants' motion for summary judgment. We overrule Appellants'

25

issues on appeal and affirm the judgment of the trial court.

/s/ April Farris
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.

26

# APPENDIX 2

# TRIAL COURT EDJA
# JUDGMENT
December 7, 2020

12/7/2020 4:33 PM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-20-006848**
**Jessica A. Limon**

NO. D-1-GN-20-006848

| | | |
|---|---|---|
| In re | § | In The District Court Of |
| | § | |
| THE CITY OF SAN ANTONIO, TEXAS, | § | |
| acting by and through the City Public | § | |
| Service Board of San Antonio, Texas, | § | |
| and CITY OF SAN ANTONIO, TEXAS | § | |
| ELECTRIC AND GAS SYSTEMS | § | |
| REVENUE BONDS, TAXABLE NEW | § | |
| SERIES 2009C (DIRECT SUBSIDY- | § | Travis County, Texas |
| BUILD AMERICA BONDS), CITY OF | § | |
| SAN ANTONIO, TEXAS ELECTRIC AND | § | |
| GAS SYSTEMS REVENUE BONDS, | § | |
| TAXABLE NEW SERIES 2010A (DIRECT | § | |
| SUBSIDY-BUILD AMERICA BONDS), | § | |
| CITY OF SAN ANTONIO, TEXAS | § | |
| ELECTRIC AND GAS SYSTEMS JUNIOR | § | |
| LIEN REVENUE BONDS, TAXABLE | § | |
| SERIES 2010A (DIRECT SUBSIDY- | § | 353rd Judicial District |
| BUILD AMERICA BONDS), CITY OF | § | |
| SAN ANTONIO, TEXAS ELECTRIC AND | § | |
| GAS SYSTEMS REVENUE BONDS, | § | |
| TAXABLE NEW SERIES 2012, CITY OF | § | |
| SAN ANTONIO, TEXAS ELECTRIC AND | § | |
| GAS SYSTEMS REVENUE REFUNDING | § | |
| BONDS, NEW SERIES 2012, CITY OF | § | |
| SAN ANTONIO, TEXAS ELECTRIC AND | § | |
| GAS SYSTEMS JUNIOR LIEN REVENUE | § | |
| BONDS, SERIES 2014, CITY OF SAN | § | |
| ANTONIO, TEXAS ELECTRIC AND GAS | § | |
| SYSTEMS REVENUE BONDS, NEW | § | |
| SERIES 2015, CITY OF SAN ANTONIO, | § | |
| TEXAS ELECTRIC AND GAS SYSTEMS | § | |
| REVENUE REFUNDING BONDS, NEW | § | |
| SERIES 2015, CITY OF SAN ANTONIO, | § | |
| TEXAS ELECTRIC AND GAS SYSTEMS | § | |
| VARIABLE RATE JUNIOR LIEN | § | |
| REVENUE REFUNDING BONDS, | § | |
| SERIES 2015A, CITY OF SAN ANTONIO, | § | |
| TEXAS ELECTRIC AND GAS SYSTEMS | § | |
| VARIABLE RATE JUNIOR LIEN | § | |
| REVENUE REFUNDING BONDS, | § | |
| SERIES 2015B, CITY OF SAN ANTONIO, | § | |
| TEXAS ELECTRIC AND GAS SYSTEMS | § | |
| VARIABLE RATE JUNIOR LIEN | § | |
| REVENUE BONDS, SERIES 2015C, CITY | § | |

Copy from re:SearchTX

OF SAN ANTONIO, TEXAS ELECTRIC §
AND GAS SYSTEMS VARIABLE RATE §
JUNIOR LIEN REVENUE BONDS, §
SERIES 2015D, CITY OF SAN ANTONIO, §
TEXAS ELECTRIC AND GAS SYSTEMS §
REVENUE REFUNDING BONDS, NEW §
SERIES 2016, CITY OF SAN ANTONIO, §
TEXAS ELECTRIC AND GAS SYSTEMS §
REVENUE AND REFUNDING BONDS, §
NEW SERIES 2017, CITY OF SAN §
ANTONIO, TEXAS ELECTRIC AND GAS §
SYSTEMS REVENUE REFUNDING §
BONDS, NEW SERIES 2017, CITY OF §
SAN ANTONIO, TEXAS ELECTRIC AND §
GAS SYSTEMS REVENUE REFUNDING §
BONDS, NEW SERIES 2018, CITY OF §
SAN ANTONIO, TEXAS ELECTRIC AND §
GAS SYSTEMS VARIABLE RATE §
JUNIOR LIEN REVENUE REFUNDING §
BONDS, SERIES 2018, CITY OF SAN §
ANTONIO, TEXAS ELECTRIC AND GAS §
SYSTEMS REVENUE REFUNDING §
BONDS, NEW SERIES 2018A, CITY OF §
SAN ANTONIO, TEXAS ELECTRIC AND §
GAS SYSTEMS REVENUE REFUNDING §
BONDS, NEW SERIES 2019, CITY OF §
SAN ANTONIO, TEXAS ELECTRIC AND §
GAS SYSTEMS JUNIOR LIEN REVENUE §
REFUNDING BONDS, SERIES 2019, §
CITY OF SAN ANTONIO, TEXAS §
ELECTRIC AND GAS SYSTEMS §
REVENUE REFUNDING BONDS, NEW §
SERIES 2020, CITY OF SAN ANTONIO, §
TEXAS ELECTRIC AND GAS SYSTEMS §
VARIABLE RATE JUNIOR LIEN §
REVENUE REFUNDING BONDS, §
SERIES 2020, CITY OF SAN ANTONIO, §
TEXAS ELECTRIC AND GAS SYSTEMS §
REVENUE REFUNDING BONDS, §
TAXABLE NEW SERIES 2020, CITY OF §
SAN ANTONIO, TEXAS ELECTRIC AND §
GAS SYSTEMS COMMERCIAL PAPER §
NOTES, SERIES A (TAX-EXEMPT), §
CITY OF SAN ANTONIO, TEXAS §
ELECTRIC AND GAS SYSTEMS §
COMMERCIAL PAPER NOTES, SERIES §
B (TAX-EXEMPT), AND CITY OF SAN §

Copy from re:SearchTX

ANTONIO, TEXAS ELECTRIC AND GAS §
SYSTEMS COMMERCIAL PAPER §
NOTES, SERIES C (TAX-EXEMPT). §
§
§
§
§
§

---

## FINAL JUDGMENT

---

On December 7, 2020, the Court conducted a hearing and trial on the Original Petition for Expedited Declaratory and Injunctive Relief filed by The City of San Antonio, Texas (the "City" or the "Issuer"), acting by and through the City Public Service Board of San Antonio, Texas (the "Board") (and who now conducts business under the name CPS Energy), pursuant to Chapter 1205 of the Texas Government Code ("Chapter 1205"). The City appeared by and through its counsel of record. The Attorney General of the State of Texas also appeared, having waived formal service of process as permitted by Chapter 1205.

Having considered the evidence and the arguments of all present, the Court makes the following findings of fact and conclusions of law:

1.      The City is an issuer of public securities as defined by Chapter 1205 and is authorized to bring this action.

2.      The City has complied with the statutory requirements of Chapter 1205, including timely and proper notice of trial.

3.      The City owns its electric and gas utility systems (together, the "Systems").

4.      For the purpose of building, improving, extending, enlarging, and repairing the Systems or refinancing previously issued revenue obligations, the City has issued, sold, and delivered the following public securities, as defined by Chapter 1205, that remain outstanding (the "Public Securities"):

- 3 -

Copy from re:SearchTX

(a)  "City of San Antonio, Texas Electric and Gas Systems Revenue Bonds, Taxable New Series 2009C (Direct Subsidy-Build America Bonds)";

(b)  "City of San Antonio, Texas Electric and Gas Systems Revenue Bonds, Taxable New Series 2010A (Direct Subsidy-Build America Bonds)";

(c)  "City of San Antonio, Texas Electric and Gas Systems Junior Lien Revenue Bonds, Taxable Series 2010A (Direct Subsidy-Build America Bonds)";

(d)  "City of San Antonio, Texas Electric and Gas Systems Revenue Bonds, Taxable New Series 2012";

(e)  "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2012";

(f)  "City of San Antonio, Texas Electric and Gas Systems Junior Lien Revenue Bonds, Series 2014";

(g)  "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Refunding Bonds, Series 2015A";

(h)  "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Refunding Bonds, Series 2015B";

(i)  "City of San Antonio, Texas Electric and Gas Systems Revenue Bonds, New Series 2015";

(j)  "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2015";

(k)  "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Bonds, Series 2015C";

(l)  "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Bonds, Series 2015D";

- 4 -

Copy from re:SearchTX

(m)　"City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2016";

(n)　"City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2017";

(o)　"City of San Antonio, Texas Electric and Gas Systems Revenue and Refunding Bonds, New Series 2017";

(p)　"City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2018";

(q)　"City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Refunding Bonds, Series 2018";

(r)　"City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2018A";

(s)　"City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2019";

(t)　"City of San Antonio, Texas Electric and Gas Systems Junior Lien Revenue Refunding Bonds, Series 2019";

(u)　"City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2020";

(v)　"City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Refunding Bonds, Series 2020";

(w)　"City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, Taxable New Series 2020";

(x)　"City of San Antonio, Texas Electric and Gas Systems Electric and Gas Systems Commercial Paper Notes, Series A (Tax-Exempt)";

Copy from re:SearchTX

(y) "City of San Antonio, Texas Electric and Gas Systems Electric and Gas Systems Commercial Paper Notes, Series B (Tax-Exempt)"; and

(z) "City of San Antonio, Texas Electric and Gas Systems Electric and Gas Systems Commercial Paper Notes, Series C (Tax-Exempt)."

5. For each Public Security, the City that has made a valid "public securities authorization" as defined by Chapter 1205 (collectively, the "Ordinances"), which are as follows:[1]

(a) Ordinance No. 2009-05-21-0401, "City of San Antonio, Texas Electric and Gas Systems Revenue Bonds, Taxable New Series 2009C (Direct Subsidy-Build America Bonds)";

(b) Ordinance No. 2010-02-18-0123, "City of San Antonio, Texas Electric and Gas Systems Revenue Bonds, Taxable New Series 2010A (Direct Subsidy-Build America Bonds)";

(c) Ordinance No. 2010-10-21-0926, "City of San Antonio, Texas Electric and Gas Systems Junior Lien Revenue Bonds, Taxable Series 2010A (Direct Subsidy-Build America Bonds)";

(d) Ordinance No. 2011-12-08-1018, "City of San Antonio, Texas Electric and Gas Systems Revenue Bonds, Taxable New Series 2012";

(e) Ordinance No. 2012-05-17-0370, "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2012";

(f) Ordinance No. 2014-05-15-0347, "City of San Antonio, Texas Electric and Gas Systems Junior Lien Revenue Bonds, Series 2014";

---

[1] Ordinance No. 2015-06-18-0598 authorized two separate series, while Ordinance No. 2019-04-11-0315 authorized four separate series.

- 6 -

Copy from re:SearchTX

(g)    Ordinance No. 2015-06-18-0597, "City of San Antonio, Texas Electric and Gas Systems Revenue Bonds, New Series 2015";

(h)    Ordinance No. 2015-06-18-0596, "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2015";

(i)    Ordinance No. 2014-10-30-0841, "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Refunding Bonds, Series 2015A";

(j)    Ordinance No. 2014-10-30-0842, "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Refunding Bonds, Series 2015B";

(k)    Ordinance No. 2015-06-18-0598, "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Bonds, Series 2015C" and "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Bonds, Series 2015D";

(l)    Ordinance No. 2016-06-02-0404, "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2016";

(m)    Ordinance No. 2017-02-23-0114A, "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2017";

(n)    Ordinance No. 2017-02-23-0114, "City of San Antonio, Texas Electric and Gas Systems Revenue and Refunding Bonds, New Series 2017";

(o)    Ordinance No. 2018-06-14-0452, "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2018";

(p)    Ordinance No. 2018-06-14-0452B, "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Refunding Bonds, Series 2018";

(q)    Ordinance No. 2018-06-14-0452A, "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2018A";

Copy from re:SearchTX

(r)     Ordinance No. 2019-04-11-0315, "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2019", "City of San Antonio, Texas Electric and Gas Systems Junior Lien Revenue Refunding Bonds, Series 2019", "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, New Series 2020", "City of San Antonio, Texas Electric and Gas Systems Variable Rate Junior Lien Revenue Refunding Bonds, Series 2020";

(s)     Ordinance No. 2020-09-10-0636, "City of San Antonio, Texas Electric and Gas Systems Revenue Refunding Bonds, Taxable New Series 2020"; and

(t)     Ordinance No. 2019-04-11-0314, "City of San Antonio, Texas Electric and Gas Systems Commercial Paper Notes, Series A (Tax-Exempt); "City of San Antonio, Texas Electric and Gas Systems Commercial Paper Notes, Series B (Tax-Exempt); and "City of San Antonio, Texas Electric and Gas Systems Commercial Paper Notes, Series C (Tax-Exempt)".

6.     The Court has subject matter jurisdiction over this action, and venue in Travis County is proper.

7.     The Court has *in rem* jurisdiction over the Public Securities, as well as personal jurisdiction over the City, acting by and through the Board; the Attorney General; all residents, property owners, and taxpayers of the City; all ratepayers and customers of CPS Energy, including residential, commercial, retail, and wholesale customers; and any other persons who have or claim a right, title, or interest in any property or money to be affected by the Ordinances or the issuance of the Public Securities (collectively, the "Interested Parties").

IT IS THEREFORE ORDERED that, pursuant to Chapter 1205, the City is entitled to a final declaratory judgment as follows:

1.     The Public Securities and Ordinances are legal, valid, and incontestable.

- 8 -

Copy from re:SearchTX

2.      The following covenants, representations, and warranties contained in the Ordinances are legal, valid, enforceable, and binding on the City for the entire time period during which the debt obligations of the Public Securities remain outstanding: (a) vest management and control of the Systems in the Board consisting of five Trustees, one of whom is the Mayor of the City of San Antonio, Texas (the "Governance Provisions"); (b) allow Board Trustees to serve for five-year terms subject to one reappointment term (the "Term Limit Provisions"), and (c) provide the exclusive methods to amend the Ordinances (the "Amendment Provisions").

3.      The actual or constructive amendment of any term, provision, or covenant of the Ordinances concerning the Governance Provisions, Term Limit Provisions, and Amendment Provisions, outside the exclusive methods prescribed by the Ordinances themselves is invalid and shall result in an impairment of contract between the City and the holders of the Public Securities.

IT IS FURTHER ORDERED that this judgment is binding and conclusive against the City, the Attorney General, the Comptroller of Public Accounts for the State of Texas, and the Interested Parties.

IT IS FURTHER ORDERED that this judgment is a permanent injunction against the filing by any person of any proceeding contesting the validity of (a) the Public Securities or the Ordinances; (b) each provision made for the payment of the Public Securities or of any interest on the Public Securities; and (c) any adjudicated matter and any matter that could have been raised in this action.

IT IS FURTHER ORDERED that the Public Securities may include a certificate that contains the follow statement: "This obligation was validated and confirmed by a judgment entered on December 7, 2020, by the 353rd Judicial District Court, Travis County, Texas, Cause No. D-1-GN-20-006848, which perpetually enjoins the commencement of any suit, action, or proceeding

- 9 -

Copy from re:SearchTX

involving the validity of this obligation, or the provision made for the payment of the principal and interest of the obligation."

IT IS FURTHER ORDERED that all relief not expressly granted in this judgment is herein denied.

This judgment finally disposes of all parties and all claims and is appealable as an accelerated appeal pursuant to the terms of TEX. GOV'T CODE § 1205.068.

SIGNED THIS 7th day of December, 2020.

_____
TIM SULAK, JUDGE PRESIDING

- 10 -

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 48711253
Status as of 12/11/2020 9:07 AM CST

Associated Case Party: City of San Antonio, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ileana M.Navarro | | ileana.navarro@nortonrosefulbright.com | 12/7/2020 4:33:47 PM | SENT |
| Courtney Spizzo | | courtney.spizzo@nortonrosefulbright.com | 12/7/2020 4:33:47 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rosemarie Kanusky | 790999 | rkanusky@mphlegal.com | 12/7/2020 4:33:47 PM | SENT |

Associated Case Party: City Public Service Board of San Antonio, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Paul Denton Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 12/7/2020 4:33:47 PM | SENT |
| Michael O'Donnell | | mike.odonnell@nortonrosefulbright.com | 12/7/2020 4:33:47 PM | SENT |

Associated Case Party: Attorney General, State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William SumnerMacdaniel | | william.macdaniel@oag.texas.gov | 12/7/2020 4:33:47 PM | SENT |

Copy from re:SearchTX

# APPENDIX 3

# CITIZENS' RIGHT
# TO AMEND CHARTER

**Art. 11, Sec. 5, Texas Constitution
Art. 1, Sec. 2, Texas Constitution
§9.004, Texas Local Government Code**

WESTLAW CLASSIC

Vernon's Texas Statutes and Codes Annotated

**Constitution** of the State of Texas 1876 (Refs & Annos)

**§ 5. Cities of more than 5, 000 population: adoption or amendment of charters; taxes; debt restrictions**

TX CONST Art. 11, § 5    Vernon's Texas Statutes and Codes Annotated    Constitution of the State of Texas 1876Effective: December 5, 2011    *(Approx. 2 pages)*

## Effective: December 5, 2011

Vernon's Ann.Texas **Const.** Art. 11, § 5

## § 5. Cities of more than 5,000 population: adoption or amendment of charters; taxes; debt restrictions

### Currentness

(a) Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters. If the number of inhabitants of cities that have adopted or amended their charters under this section is reduced to five thousand (5000) or fewer, the cities still may amend their charters by a majority vote of the qualified voters of said city at an election held for that purpose. The adoption or amendment of charters is subject to such limitations as may be prescribed by the Legislature, and no charter or any ordinance passed under said charter shall contain any provision inconsistent with the **Constitution** of the State, or of the general laws enacted by the Legislature of this State. Said cities may levy, assess and collect such taxes as may be authorized by law or by their charters; but no tax for any purpose shall ever be lawful for any one year, which shall exceed two and one-half per cent. of the taxable property of such city, and no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent. thereon, except as provided by Subsection (b). Furthermore, no city charter shall be altered, amended or repealed oftener than every two years.

(b) To increase efficiency and effectiveness to the greatest extent possible, the legislature may by general law authorize cities to enter into interlocal contracts with other cities or counties without meeting the assessment and sinking fund requirements under Subsection (a).

### Credits

Adopted Feb. 15, 1876. Amended Aug. 3, 1909, proclamation Sept. 24, 1909; Nov. 5, 1912, proclamation Dec. 30, 1912; Nov. 5, 1991; Nov. 8, 2011, eff. Dec. 5, 2011.

### Editors' Notes

#### INTERPRETIVE COMMENTARY

#### 2007 Main Volume

In 1912 a **constitutional** amendment was adopted providing for home rule in cities with populations of above 5,000. Before the adoption of this amendment there had been two classes of cities, special law cities of over 5,000 population and general law cities with populations of 5,000 or less. There were three general laws under which cities might incorporate, one governing incorporations as "towns or villages" and extending to all places with a population between 500 and 10,000; a second, governing "cities and towns" and extending to all places with a population between 1,000 and 10,000; and a third, governing adoption of the commission type of government by a referendum vote extending to incorporated

Actions contesting charters

Adoption of charters

Airports

Alcoholic beverages, zoning

Ambulances, motor vehicles

Amendment of charters

Annexation

Appraisal, taxation

Assessments, taxation

Auctions

Availability of funds affecting creation of indebtedness

Bonds, generally, indebtedness

Boundaries, generally

Buses and vehicles for hire, motor vehicles

Challenges to annexation

Charter elections, charters

Charters

Claims against cities

Conflict with constitution or general laws

Conflicting rights of annexation

Construction and application

Construction of powers

Conveyances and leases

Current expenses, indebtedness

Dance halls

Debt, defined, indebtedness

Declaratory judgment

Delegation of powers

Elections

Eminent domain

Employment contracts, indebtedness

Environmental regulations

Evergreen clause of collective bargaining agreement, indebtedness

Federal territory, annexation

Fees and penalties, generally

Fences

Franchises

Funding, generally

Grant of powers

Health regulations

Historic preservation

Indebtedness

Injunction, conflict with constitution or general laws

Injunctions

Interest and sinking fund, generally, indebtedness

Labor and employment

Law enforcement

Laws applicable to home rule cities

Legislative intent

Lending regulations

License fees, taxation

Liens, taxation

Limitation of powers

places of all kinds from 500 to 5,000 population, and to unincorporated places with populations of from 200 to 5,000.

Both the special law cities and the general law cities had owed their existence and powers to the legislature. Now, however, with the home rule amendment, cities with populations of over 5,000 might draw their own charters and include anything they wished not inconsistent with the general laws or the **constitution**. That this home rule amendment deprived the legislature of its former power to grant and change city charters by special law was not at first clear, but this fact was established by court decisions in 1920 and 1929. (See State ex rel. Wayland v. Vincent, Civ.App., 217 S.W. 402, 1920, affirmed Com.App., 235 S.W. 1084; Ex parte Norton, 113 Cr.R. 306, 21 S.W.2d 663, 1929) Two further limitations were included in the amendment: one, the cities' taxing power is circumscribed; and two, the cities are not permitted to alter their charters oftener than every two years.

Before the legislature passed an enabling act on the home rule amendment, twenty-four cities had drafted their own charters. These were all later validated by the legislature; however, in 1913 a long and involved enabling act was passed. It quoted the amendment and, for greater clarity, enumerated thirty-four specific powers which the cities might exercise, ending with the statement that this enumeration was not meant to preclude the exercise of other powers incident to the enjoyment of local self-government. (Vernon's Ann.Civ.St. arts. 1165-1182).

Although the amendment itself was silent on the method of adopting home rule charters, the enabling act provided that the question of selecting a charter commission could be submitted to the voters by a two-thirds vote of the council or by a petition signed by 10% of the voters. Moreover, it provided that the city council or other governing body may appoint a charter commission without an election on the question. Provision is to be made on the ballot for election of a charter commission of not less than 15 nor more than one for each 3,000 inhabitants. From forty to ninety days after the completion of the charter, it is submitted to the voters, by sections, for their approval or disapproval. A majority vote is decisive.

## Relevant Additional Resources

Additional Resources listed below contain your search terms.

### RESEARCH REFERENCES

### ALR Library

12 American Law Reports 679, **Constitutionality** of City or Town Planning Statutes or Ordinances.
41 American Law Reports 790, Application to Permanent Improvements of **Constitutional** or Statutory Provision Against County or Municipality Exceeding Current Revenue.
90 American Law Reports 1240, Failure to Comply With **Constitutional** or Statutory Requirement that Municipality, or Other Political Subdivision, at or Before Incurring Indebtedness, Shall Provide a Tax for Its Payment as Affecting Validity of Indebtedness or Obligations Issued Therefor.

### Relevant Notes of Decisions (225)

View all 704

Notes of Decisions listed below contain your search terms.

### Construction and application

Under Texas law, "home-rule cities" are those operating under a municipal charter as provided for in the **Texas Constitution**. Planned Parenthood of Greater Texas Surgical Health Services v. City of Lubbock, Texas (N.D.Tex. 2021) 542 F.Supp.3d 465, reconsideration denied 2021 WL 4775135, appeal dismissed 2022 WL 1554993. Municipal Corporations 65

Home-rule cities are those operating under municipal charter as provided for in the **Texas Constitution**. ESI/Employee Solutions, L.P. v. City of Dallas (E.D.Tex. 2021) 531 F.Supp.3d 1181. Municipal Corporations 65

Mandamus
Methods or procedures. annexation
Motor vehicles
Multi-year contracts, indebtedness
Nature of municipal corporations
Officers, agents, and employees
Parking regulations, motor vehicles
Powers
Preemption. charters
Preemption, conflict with constitution or general laws
Property subject to taxation
Public buildings and improvements, indebtedness
Public highways, annexation
Public highways, generally
Purpose
Rate or amount of tax. taxation
Rates, regulation generally
Removal, officers, agents, and employees
Schools
Service contracts. indebtedness
Sewers
Sovereign immunity
Special laws granting or amending charters
Standard of review, conflict with constitution or general laws
Subsequent legislation, conflict with constitution or general laws
Taxation
Vote on or consent to annexation
Warrants, generally. indebtedness
Water districts, annexation
Water districts, indebtedness
Water or light plants, indebtedness
Zoning

NOTES OF DECISIONS (46)

In general
Apportionment of congressional and state
legislative districts
Elections
Judicial process
Legislative powers
Political parties
Political power
Republican form of government
Sovereign immunity
Validity

Vernon's Texas Statutes and Codes Annotated
**Constitution** of the State of Texas 1876 (Refs & Annos)

**§ 2. Inherent political power; republican form of government**
TX CONST Art. 1, § 2    Vernon's Texas Statutes and Codes Annotated    Constitution of the State of Texas 1876    *(Approx. 2 pages)*

Vernon's Ann.Texas **Const**. Art. **1**, § **2**

## § **2**. Inherent political power; republican form of government

Currentness

All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient.

**Credits**
Adopted Feb. 15, 1876.

**Editors' Notes**

**INTERPRETIVE COMMENTARY**

**2018 Main Volume**

A provision similar to the present **Section 2** was contained in the **Constitution** of the Republic of Texas, and in all following state **constitutions** except that of 1869. Herein is embodied the notion of popular sovereignty, a basic American theory springing from the thought of the democratic and libertarian ideology of the eighteenth century, in opposition to monarchical and authoritarian forms of government, and expressive of the idea that the will of the people is the only true source of governmental power.

Lincoln's words, "government of the people, by the people, and for the people," express the meaning in concise form. In the last analysis there is signified the fact that the people are sovereign, not the legislative or some other governmental branch, and therefore the people, the aggregate or mass of individuals who constitute the State of Texas, have the right to protect, themselves from the instruments of the government they created by reserving to themselves the rights and privileges which are beyond the interference of the power of government.

The theory signifies, in general, the right of the people of the state to make or alter the form of government as they please subject, of course, to the **Constitution** of the United States, and this conception is carried out here in the words that the people "have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient." Hence the people themselves retain the right to change the form of government, and change or alteration by the legislature would be unconstitutional as such power is not granted to that body. See Ex parte Farnsworth, 61 Cr.R. 353, 135 S.W. 535, 33 L.R.A., N.S., 968 (1911).

Moreover, the section goes further, and by it the people limit their own power to change the form of government in **one** respect, namely, that even they cannot alter or abolish so as to destroy the republican form of government. Ex parte Farnsworth, supra. This limitation was probably unnecessary for the **Constitution**

of the United States, **Article** IV, Section 4, guarantees to every state a republican form of government, seemingly making the approval of the United States of any state **constitution** incumbent upon the establishment of such a form of government therein.

Too, by this Federal **Constitutional** provision, the Federal Government stands ready to take proper measures against any state attempting to do away with its republican form of government.

As to what constitutes a republican form of government, the Supreme Court of Texas in Bonner (Le Febre) v. Belsterling, 104 T. 432, 138 S.W. 571 (1911) accepted the definition of Thomas Jefferson which declared the following: "Indeed, it must be acknowledged that the term 'republic' is of very vague application in every language. Were I to assign to this term a precise and definite idea, I would say, purely and simply, it means a government by its citizens in mass, acting directly and not personally, according to rules established by the majority; and that every other government is more or less republican in proportion as it has in its composition more or less of this ingredient of the direct action of the citizens ...... we may say with truth and meaning that governments are more or less republican as they have more or less of the element of popular election and control in their composition ......"

## Relevant Additional Resources

Additional Resources listed below contain your search terms.

### HISTORICAL NOTES

### Earlier Constitutions:

Const.1845, Art. **1**, § **1**.
Const.1861, Art. **1**, § **1**.
Const.1866, Art. **1**, § **1**.

## Relevant Notes of Decisions (25)

View all 46

Notes of Decisions listed below contain your search terms.

### Validity

Provisions of **Texas Constitution** guaranteeing to citizens liberty of forming political associations do not, by reason of their failure to forbid political organizations from making racial or color qualifications for membership, violate U.S.C.A. Const.Amend. 14 or 15. Grovey v. Townsend, U.S.Tex.1935, 55 S.Ct. 622, 295 U.S. 45, 79 L.Ed. 1292. **Constitutional** Law ☞ 1482; **Constitutional** Law ☞ 2932; **Constitutional** Law ☞ 3284; Election Law ☞ 161

### In general

As with the federal **constitution**, the **Texas Constitution** was adopted to enable the people to govern themselves, through their elected leaders. Matzen v. McLane (Tex. 2021) 659 S.W.3d 381, rehearing denied. **Constitutional** Law ☞ 501

### Republican form of government

Facial **constitutional** challenge to city ordinances as violative of republican form of government, brought by owners of real property in city's extra-territorial jurisdiction who could not vote in city elections, presented nonjusticiable political question, and, thus, court could not address issue without violating separation of powers; there was textually demonstrable **constitutional** commitment of issue of whether ordinances violated republican form of government to legislature, **Texas Constitution** delegated to Legislature people's authority to determine city's form and powers, and there was lack of judicially discoverable and manageable standards as to the issue, because what constituted "republican form of government" was indefinite. Elliott v. City of College Station (Tex.App.-Texarkana 2023) 674 S.W.3d 653, review granted. **Constitutional** Law ☞ 2585

WESTLAW CLASSIC

NOTES OF DECISIONS (59)

In general
Ballots
Declaratory judgment
Duty to call election
Judicial regulation
Justiciability
Mandamus
New charter distinguished
Notice
Petition
Power to amend
Presumptions and burden of proof
Review
Standing
Subject matter limitation
Summary judgment
Two year prohibition

Vernon's **Texas** Statutes and Codes Annotated
**Local Government Code** (Refs & Annos)

§ **9.004. Charter Amendments**
TX LOCAL GOVT § 9.004    Vernon's Texas Statutes and Codes Annotated    Local Government Code Effective: September 1, 2023    *(Approx. 2 pages)*

Chapter 9. Home-Rule Municipality

Proposed Legislation

### Effective: September 1, 2023

### V.T.C.A., **Local Government Code** § 9.004

### § **9.004.** Charter Amendments

Currentness

(a) Except as provided by Section 9.0045, the governing body of a municipality on its own motion may submit a proposed charter amendment to the municipality's qualified voters for their approval at an election. The governing body shall submit a proposed charter amendment to the voters for their approval at an election if the submission is supported by a petition signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality or 20,000, whichever number is the smaller.

(b) The ordinance ordering the election shall provide for the election to be held on the first authorized uniform election date prescribed by the Election Code or on the earlier of the date of the next municipal general election or presidential general election. The election date must allow sufficient time to comply with other requirements of law and must occur on or after the 30th day after the date the ordinance is adopted.

(c) Notice of the election shall be published in a newspaper of general circulation published in the municipality. The notice must:

(1) include a substantial copy of the proposed amendment;

(2) include an estimate of the anticipated fiscal impact to the municipality if the proposed amendment is approved at the election; and

(3) be published on the same day in each of two successive weeks, with the first publication occurring before the 14th day before the date of the election.

(d) An amendment may not contain more than one subject.

(e) The ballot shall be prepared so that a voter may approve or disapprove any one or more amendments without having to approve or disapprove all of the amendments.

(f) The requirement imposed by Subsection (c)(2) does not waive governmental immunity for any purpose and a person may not seek injunctive relief or any other judicial remedy to enforce the estimate of the anticipated fiscal impact on the municipality.

### Credits
Acts 1987, 70th Leg., ch. 149, § 1, eff. Sept. 1, 1987. Amended by Acts 1997, 75th Leg., ch. 1219, § 5, eff. June 20, 1997; Acts 1997, 75th Leg., ch. 1349, § 76, eff. Sept. 1, 1997; Acts 2007, 80th Leg., ch. 414, § 1, eff. Sept. 1, 2007; Acts 2023, 88th Leg., ch. 360 (S.B. 1860), § 3, eff. Sept. 1, 2023.

# APPENDIX 4

# §1205.021, Texas Gov't Code, Authority to Bring EDJA Action

WESTLAW CLASSIC

**NOTES OF DECISIONS** (18)

Construction and application
Governmental immunity
Public security authorization
Purpose
Res judicata
Rules of Civil Procedure

Vernon's Texas Statutes and Codes Annotated
Government Code (Refs & Annos)

### § 1205.021. Authority to Bring Action

TX GOVT § 1205.021    Vernon's Texas Statutes and Codes Annotated    Government Code   *(Approx. 2 pages)*

Chapter 1205. Public Security Declaratory Judgment Actions (Refs & Annos)

Subchapter B. Declaratory Judgment Action

V.T.C.A., Government Code § 1205.021

### § 1205.021. Authority to Bring Action

Currentness

An issuer may bring an action under this chapter to obtain a declaratory judgment as to:

(1) the authority of the issuer to issue the public securities;

(2) the legality and validity of each public security authorization relating to the public securities, including if appropriate:

(A) the election at which the public securities were authorized;

(B) the organization or boundaries of the issuer;

(C) the imposition of an assessment, a tax, or a tax lien;

(D) the execution or proposed execution of a contract;

(E) the imposition of a rate, fee, charge, or toll or the enforcement of a remedy relating to the imposition of that rate, fee, charge, or toll; and

(F) the pledge or encumbrance of a tax, revenue, receipts, or property to secure the public securities;

(3) the legality and validity of each expenditure or proposed expenditure of money relating to the public securities; and

(4) the legality and validity of the public securities.

### Credits

Added by Acts 1999, 76th Leg., ch. 227, § 1, eff. Sept. 1, 1999.

### Notes of Decisions (18)

V. T. C. A., Government Code § 1205.021, TX GOVT § 1205.021
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.



# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Charlene Carroll on behalf of Darby Riley
Bar No. 16924400
charlene@rileylawfirm.com
Envelope ID: 100924937
Filing Code Description: Motion for Rehearing
Filing Description: Appellants' Motion for Rehearing
Status as of 5/16/2025 11:22 AM CST

Associated Case Party: Terry Burns

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Charlene BCarroll-paralegal | | charlene@rileylawfirm.com | 5/16/2025 11:02:07 AM | SENT |

Associated Case Party: The City of San Antonio, Texas, Acting By and Through The City Public Service Board

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael W.O'Donnell | | mike.odonnell@nortonrosefulbright.com | 5/16/2025 11:02:07 AM | SENT |

Associated Case Party: The CIty of San Antonio, Texas Acting By and THrough The City Public Service Board of San Antonio, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Paul Trahan | | paul.trahan@nortonrosefulbright.com | 5/16/2025 11:02:07 AM | SENT |
| Emily Wolf | | emily.wolf@nortonrosefulbright.com | 5/16/2025 11:02:07 AM | SENT |

Associated Case Party: Lynn Saarinen

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lynn Saarinen | | Lynn.Saarinen@oag.texas.gov | 5/16/2025 11:02:07 AM | SENT |